NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

MAE ELIZABETH HAYES and GARIC AUSTIN HAYES,

Debtors.

Bankruptcy Case No. 24-00086-GS
Chapter 7

---

STEVEN HRIN and KELCI HATCHER,

Plaintiffs,

v.

MAE ELIZABETH HAYES and GARIC AUSTIN HAYES,

Defendants.

Adversary Proceeding No. 24-90006-GS

**MEMORANDUM DECISION AFTER TRIAL**

Trial
DATE: April 28, 2025
TIME: 9:30 a.m.

Trial in this adversary proceeding was held over two non-consecutive days, on March 3, 2025, and April 28, 2025. Gregory Parvin appeared for plaintiffs Steven Hrin and Kelci Hatcher. Robert Crowther appeared for defendants Garic and Mae Hayes.[1] After the close of evidence, the parties each presented closing argument and the court took this matter under submission.

In this action, the plaintiffs seek to except a debt from discharge under § 523(a)(2)(A). The plaintiffs' complaint also stated claims under § 523(a)(4) and (6). During closing argument, the plaintiffs explicitly abandoned their § 523(a)(6) claim. Though they did not explicitly state that they were abandoning their § 523(a)(4) claim during closing argument, they never developed this

---

[1] For clarity and convenience, the court will generally use the debtor/defendants' first names. No disrespect is intended.

1

claim legally or factually in any meaningful way. This effectively prevents this court from granting any relief under § 523(a)(4).[2]

As to their § 523(a)(2)(A) claim, by the conclusion of trial in this matter, the plaintiffs only claimed fraud damages with respect to: (1) a few charges listed in monthly applications and certifications for payment ("Bills") Garic sent the plaintiffs; and (2) two line items from Garic's December 16, 2021 letter purporting to account for funds both collected and spent on the plaintiffs' construction project. Having considered the evidence, and for the reasons more fully explained below, the court finds that Garic, but not Mae, committed fraud with respect to some of these line items, in the aggregate amount of $26,768.46. This amount shall be, and is, excepted from Garic's bankruptcy discharge pursuant to § 523(a)(2)(A). The plaintiffs failed to prove any other amount of their losses arose from fraud. Nor did they prove that Mae was involved in Garic's fraud or otherwise liable for any fraud damages.

**Facts**

On January 5, 2021, Garic's company Garic Hayes General Contractor LLC (GHGC) entered into a contract with the plaintiffs to build a single family residence on Wright's Island in Big Lake, Alaska. The contract was amended in early March 2021. Pursuant to the amendment, some of the features of the residence to be built were upgraded, but in large part it added an accessory dwelling unit (ADU) to be constructed adjacent to the residence. Unlike the residence, the contract contemplated that the ADU would not be completely finished. Instead, GHGC was responsible for the rough, unfinished construction of the ADU's structure.

---

[2] The plaintiffs also stated at closing argument that their damages would be the same under either legal theory. Accordingly, because this court is granting the plaintiffs the full extent of relief to which they have demonstrated entitlement under § 523(a)(2)(A), there would be no need for this court to also address relief under § 523(a)(4). To be clear, however, the lack of development of any argument specific to § 523(a)(4) constitutes a forfeiture of this cause of action. Merely stating at closing argument that the plaintiffs have not abandoned this cause of action is not a substitute for presenting a coherent argument and analysis under § 523(a)(4).

2

It is undisputed that the contract and its amendment constituted a "fixed-price" construction contract. The parties understood this to mean that absent change orders, GHGC was entitled to the stated contract price—and no more—for the materials and services it contractually agreed to supply. The original contract price was $335,450.00. The March 2021 amendment increased the contract price by $77,564.00 to $413,014.00. The original contract provided for a 25% deposit of $83,862.50, which the plaintiffs fully funded. It is unclear whether (and by how much) the March 2021 amendment increased the deposit. Trial testimony on this point was equivocal. Perhaps the best indicator is the March Bill that Garic sent and how much the plaintiffs actually paid that month. GHGC billed the plaintiffs $142,637.50 that month but they actually paid $162,000.50. It is not entirely clear why they paid the difference of $19,363.00, but this difference closely approximates 25% of the $77,564.00 increase between the original contract price and the amended contract price. This perhaps suggests that the $19,363.00 difference was meant to be an additional deposit. Ultimately, this discrepancy is not material to the outcome of the claims as presented.

Ms. Hatcher testified that the March Bill also included large amounts meant to prepay for materials and supplies that GHGC sought to order in advance for the project. Both plaintiffs strongly doubted that GHGC actually used their funds for labor, supplies, and materials for their project. Yet, they presented no concrete or specific evidence to substantiate these doubts. As discussed below, Garic has admitted that GHGC never paid a few invoices, but there is no evidence that would permit this court to find that GHGC generally failed to pay for either the labor or materials charged in its monthly Bills.

According to the plaintiffs, both Garic and Mae made a number of representations to them regarding GHGC's ability and intent to perform. The plaintiffs testified that some of these representations were made just prior to executing the original contract. However, the plaintiffs maintain that most of these representations were made just before they entered into the March 2021 amendment. As the plaintiffs testified, they were very concerned at that time about GHGC's ability to fully perform under a fixed-price construction contract given the volatility then occurring

3

in the market for labor and materials associated with issues created by the Covid pandemic. The plaintiffs stated that both Garic and Mae assured them multiple times that GHGC could and would perform as contracted. Ms. Hatcher and Mr. Hrin claim that they relied on these assurances in entering into the contract and paying all deposit amounts.[3]

By all accounts, GHGC made significant progress on the project in February and March of 2021 but not so much in April, May, and June of 2021. By July 2021, the plaintiffs testified that they were so concerned by the lack of progress that they confronted the Hayeses about their concerns and inquired whether they needed to hire a new contractor to finish the project. Once again, Garic and Mae both assured the plaintiffs that GHGC could and would finish the job. The record is unclear whether and how the plaintiffs might have relied to their economic detriment on the July assurances. They had made their deposits to GHGC by March 2021. By July Ms. Hatcher and Mr. Hrin were paying additional amounts to GHGC based on the work performed and materials ordered. After July, they paid GHGC just under $33,000.00. Even so, they never attributed these payments to any of their fraud theories.

Garic presented the last Bill to the plaintiffs in October 2021, seeking payment of only $2,140.50 in current charges.

On or about December 13, 2021, Garic notified the plaintiffs by email that GHGC did not intend to complete the project. Ex. F, p. 5.[4] Garic followed up with an email dated December 16,

---

[3] By the close of trial, the plaintiffs effectively abandoned this broad theory of fraudulent inducement by not calculating and claiming their alleged fraud damages arising from these assurances. Even if they had done so, this court finds that the plaintiffs have failed to prove by a preponderance of the evidence that the Hayeses' assurances were knowingly false when made. The plaintiffs assert that falsity is evident from GHGC's incompetence in later performing the parts of the contract it performed and abandonment of the remaining parts of the contract. But the Hayeses presented testimony and Exhibit E showing that they successfully completed other building contracts both before and around the time GHGC entered into the contract and amendment with the plaintiffs. Thus, the Hayeses had a concrete basis for believing that GHGC could and would perform when any assurances may have been given to the plaintiffs.

[4] All references to exhibits are to those exhibits admitted at trial.

4

2025, containing his accounting for the project. Ex. 2. The accounting set forth the following amounts:

| Proceeds collected to date from client | $352,921.53 |
|---|---|
| Labor and material costs PAID on the project to date | $298,937.39 |
| General Labor from payrolled employees PAID to date | $6,360.00 |
| Profit and Overhead based on 15% of paid out costs | $45,794.61 |
| Difference between collected and cost | $1,829.53 |
| UNPAID bills that should be paid directly to subcontractors immediately to avoid possible liens ||
| Hard Rock Plumbing and Heating | $12,380.44 |
| Gibson Roofing | $25,075.00 |
| Welcome Home Tile | $10,500.00 |

All told, between February 2021 and October 2021, Garic sent a total of seven monthly Bills to the plaintiffs. No Bills were sent for the months of May or June 2021. Each of GHGC's Bills included a "certification" (Certification) under Garic's name stating:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that **all amounts have been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from Owner,** and that current payment shown herein is now due.

Ex. 3 at 4, 7, 11, 15, 19, 22, and 25 [emphasis added].

At trial, Garic admitted that his Certification represented, in part, that all amounts the plaintiffs paid for labor and materials charged in prior Bills had been paid to each supplier of such labor and materials to the extent necessary to satisfy such suppliers' claims for the corresponding amount they charged for work already performed and materials already ordered or supplied. The plaintiffs generally expressed skepticism regarding the overall accuracy of this representation, but again there was little or no evidence adduced at trial to support this skepticism. Other than three

5

or four unpaid invoices that Garic admitted GHGC had not paid, there is nothing in the record that enables this court to generally find that amounts represented as paid by virtue of the Certifications were falsely represented as paid.

At the close of trial, the court asked the plaintiffs to specify and quantify each fraud loss they claimed to have suffered. The plaintiffs also stated that they would provide a post-trial designation of all documentary evidence they relied on to support the amount of their fraud loss claims. The plaintiffs have designated their losses in the following amounts:

| Work or Material Supplied | Supplier | Claimed Amount of Fraud Loss | Evidence Relied On |
|---|---|---|---|
| Flooring | Carpet World | $8,500.00 | Ex. 3 |
| Plumbing | Hard Rock Plumbing & Heating | $7,181.00[5] | Exs. 3,5 |
| Roofing | Gibson Roofing | $13,000.00 | Ex. 3 |
| General Admin. | GHGC | $3,860.00 | Exs. 2, 3 |
| Profit | GHGC | $45,794.61 | Ex. 2 |

Adv. ECF No. 32. The above amounts constitute the entirety of the plaintiffs' claimed fraud losses as of the close of trial. The plaintiffs have not identified any other amounts as claimed fraud losses.

## Analysis

Because the plaintiffs' underlying liability was not liquidated prepetition, the court must engage in a two-step process: first it must determine whether a debt exists under applicable law, and second, whether the debt is excepted from discharge under § 523(a). *Banks v. Gill Distrib. Ctrs., Inc.,* 263 F.3d 862, 868 (9th Cir. 2001); *see also Schindler v. Milliron (In re Milliron)*, 2021 WL 4515239, at *8 (Bankr. D. Alaska Sept. 30, 2021). The underlying fraud claims are governed by Alaska law while the nondischargeability claims under § 523(a)(2) are governed by federal law.

---

[5] It is unclear how the plaintiffs calculated the $7,181.00 listed in their designation of damages. In their counter-designation, the Hayeses speculated that the plaintiffs meant to claim $7,268.46, which is the difference between the amount Garic charged in the April Bill for Hard Rock's work ($26,800.00 Ex. 3, p. 12), and the amount the plaintiffs stated Garic paid Hard Rock for this work ($19,531.54). *Id.* Given the de minimis difference, the court accepts the Hayeses' slightly higher figure.

6

*See Banks*, 263 F.3d at 868. If the Hayeses are not individually indebted to the plaintiffs under Alaska law, the second step becomes unnecessary. *Gidelski v. Anton (In re Anton),* 2013 WL 1747907, at *2 (Bankr. E.D. Mich. Apr. 12, 2013). Fortunately, the elements to except a debt from discharge for fraud under § 523(a)(2)(A) largely mirror those required to state a claim for fraud under Alaska law. *In re Milliron*, 2021 WL 4515239 at *8.

Section 523(a)(2)(A) excepts from discharge debts incurred through "false pretenses, a false representation, or actual fraud." To establish actual fraud for purposes of § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence each of the following elements: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000)), *aff'd*, 407 F. App'x 176 (9th Cir. 2010); *see also Deloycheet, Inc. v. Beach (In re Beach)*, 570 B.R. 300, 325 n.162 (Bankr. D. Alaska 2017) (citing *Jarvis v. Ensminger*, 134 P.3d 353, 363 (Alaska 2006)).

To be clear, the Hayeses were not parties to the contract. The contracting parties were the plaintiffs on the one hand and GHGC on the other hand. But as a matter of general agency law, corporations and other business entities only can act through their employees and agents. *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015) (citing *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001)). In this instance, the evidence amply demonstrates that Garic acted on behalf of GHGC in presenting the Bills to the plaintiffs and in making the representations incorporated into the Bills via the Certifications. When an agent commits a tort such as fraud against a third party in the process of representing the principal in relation to a contract between the principal and the third party, the agent is subject to liability to that third party for the fraud committed. *Cf.* Restatement (Third) Of Agency § 7.01 & comment b

7

thereto (2006). This means that Garic is directly liable to Ms. Hatcher and Mr. Hrin to the extent he fraudulently induced them to pay portions of the Bills based on false Certifications.

On the other hand, there is nothing in the record connecting Mae to the amounts GHGC billed plaintiffs or to Garic's Certifications. Indeed, the evidence presented failed to demonstrate that Mae had any involvement in the Bills GHGC sent to plaintiffs—or the December 16, 2021, accounting. Therefore, any fraud found against Garic for plaintiffs' claimed losses cannot be properly attributed to Mae for purposes of excepting any portion of the resulting debt from her discharge under § 523(a)(2)(A). Accordingly, the court holds that the plaintiffs have failed to prove that Mae is liable to them for a debt arising from fraud, and the remainder of this decision will focus exclusively on Garic's potential exposure for nondischargeable debt under § 523(a)(2)(A).

As explained above, the plaintiffs have limited their claimed fraud losses to a handful of line items from Bills and Garic's December 16, 2021, accounting that plaintiffs argue were fraudulently charged. The specific line items were: (1) $8,500.00 for flooring; (2) $7,268.46 for plumbing; (3) $13,000.00 for roofing; (4) $3,860.00 for general administration; and (5) $45,794.61 for profit. The court addresses each of these line items in turn.

**A.     Claimed fraud of $8,500.00 payment for flooring.**

The plaintiffs assert that they suffered damages arising from fraud based on GHGC's line item charge of $8,500 for "floor covering" in the August 2021 Bill. Ex. 3, p. 20. As the plaintiffs explain, GHGC never paid Carpet World's invoice for their flooring order. As a result, the plaintiffs were forced to pay this charge twice—first to GHGC and second directly to Carpet World. Garic does not dispute plaintiffs were forced to pay this charge twice. But he contends that the resulting damages did not arise from fraud. According to Garic, he maintained a revolving credit account with Carpet World and regularly paid down this account. He posits that Carpet World took the funds and paid invoices GHGC owed Carpet World other than the one for the plaintiffs' flooring order. As a result, he reasons that when the plaintiffs sought to pick up their flooring order, Carpet World required them to pay for the flooring a second time before they could

8

receive the flooring. As Garic puts it, this might be a loss arising from breach of contract but does not constitute fraud.

This court disagrees. Garic's Certification in the August Bill included a representation that GHGC had, or would, pay Carpet World for the plaintiffs' flooring order. There is no evidence that GHGC specifically attempted to pay the plaintiffs' bill to Carpet World – such as a check or fund transfer to Carpet World referencing an invoice for the plaintiffs' project. Moreover, Garic's subsequent Bills included a representation that GHGC had actually paid for this flooring order. Garic has admitted that these representations were false when made. And the plaintiffs obviously relied on them to their detriment. They relied on them initially by paying GHGC's August Bill. They also relied on them subsequently by not demanding an immediate refund or credit for Carpet World's unpaid flooring invoice and continuing with the project.

This court further finds that Garic knew that his representations regarding the payment to Carpet World for the plaintiffs' flooring were false when made, or that he made them with reckless disregard for the truth. "A representation may be fraudulent, without knowledge of its falsity, if the person making it is conscious that he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented." *Hirth v. Donovan (In re Hirth)*, 2014 WL 7048395, at *11 (B.A.P. 9th Cir. Dec. 11, 2014) (cleaned up) (quoting *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 168 (B.A.P. 9th Cir. 1999)).

This court additionally finds that, given the reckless disregard for the truth and all the other circumstances surrounding Garic's solicitation of payments from the plaintiffs, Garic deceitfully intended to induce them to pay the full amount of the August Bill regardless of whether Carpet World actually had been paid for the plaintiffs' flooring order.

Accordingly, the plaintiffs' loss of $8,500.00 for flooring arises from Garic's fraud and thus that amount is nondischargeable under § 523(a)(2)(A).

**B.      Claimed fraud of $7,268.46 payment for plumbing.**

The plaintiffs assert that they were defrauded into paying $7,268.46 by the line item charge of $26,800.00 for "Plumbing/Heating/Ventilation" in GHGC's Bill sent to them in April 2021. Ex. 3, p. 12. According to the plaintiffs, GHGC only paid Hard Rock Plumbing and Heating $19,531.54, on account of plumbing labor and materials supplied for the plaintiffs' project. This payment was made in May 2021. *Id.*; *see also* Ex. H, p. 3. The plaintiffs thus conclude that the difference of $7,268.46, between what GHGC charged them in the April Bill and what GHGC paid Hard Rock on account of their invoices, constitutes fraud.

Garic contends that he never misrepresented to the plaintiffs what was paid. He supports this contention by focusing almost exclusively on the invoices GHGC received from Hard Rock on account of the plaintiffs' project. These include the spring 2021 invoice for $19,531.54 that GHGC paid in full in May 2021 and an invoice dated October 20, 2021, which GHGC received from Hard Rock **after** Garic sent GHGC's final Bill to the plaintiffs, dated October 7, 2021. Garic theorizes that he made no misrepresentation to the plaintiffs regarding payment of the Hard Rock invoices because GHGC had paid in full the only invoice it had received from Hard Rock as of the date of the last Bill containing one of Garic's Certifications.

Again, this court disagrees with Garic. The Certification in the April Bill included a representation that GHGC had or would pay Hard Rock $26,800.00 for plumbing labor and materials on the plaintiffs' project. Moreover, Garic's subsequent Bills included a representation that GHGC had actually paid this amount for plumbing. Garic effectively admitted that these representations were false when made. And the plaintiffs obviously relied on them to their detriment. They relied on them initially by paying GHGC's April Bill and they also relied on them subsequently by not demanding an immediate refund or credit for the difference between what GHGC claimed it had paid Hard Rock and what GHGC actually paid Hard Rock.[6]

---

[6] Garic's counsel during closing argument also seemed to suggest that, because this was a fixed-price contract, there was an element of "profit" baked into the scheduled values stated in each Bill for each description of work category. Counsel further suggested that some portion of the

10

For the same reasons stated in the previous section, this court also concludes that the scienter requirements of knowing falsity and intent to deceive are met here with respect to the $7,268.46 difference between what GHGC paid Hard Rock and what GHGC charged the plaintiffs. GHGC, through Garic, charged the plaintiffs for work that was not done and GHGC retained those funds. Any subsequent invoice for subsequent work by Hard Rock does not negate the knowing and fraudulent misrepresentation of the inflated invoice amount to induce the plaintiffs' payment, or the subsequent representation that GHGC had paid that full amount to Hard Rock.

Accordingly, the plaintiffs' loss of $7,268.46 for plumbing arises from Garic's fraud and that amount is nondischargeable under § 523(a)(2)(A).

**C.    Claimed fraud of $13,000.00 payment for roofing.**

The plaintiffs assert that they suffered another fraud loss of $11,000.00. They maintain that this loss arose from a charge of $7,000.00 for roofing in GHGC's Bill sent to them in March 2021 and another $4,000.00 for roofing in GHGC's Bill sent in September 2021. Ex. 3, pp. 12, 23. The plaintiffs actually claimed damages of $13,000.00 for fraudulent roofing charges. However, the court's review of Exhibit 3 as well as the plaintiffs' trial testimony reflects that the only roofing charges GHGC assessed, and that the plaintiffs paid, were $7,000.00 in March 2021 and $4,000.00 in September 2021. *Id.* Therefore, the court's analysis limits the plaintiffs to the $11,000.00 they actually paid GHGC for roofing.

GHGC never paid the roofing subcontractor, Gibson Roofing, anything on account of the project. Garic does not dispute that GHGC never paid Gibson Roofing for the labor and materials supplied for the project. But he does point out that the plaintiffs admitted they did not pay Gibson

---

$26,800.00 charged in April for plumbing included some undisclosed amount charged by GHGC for profit on plumbing labor and materials supplied to the plaintiffs for that month. In terms of the parties' fixed-price contract, this makes no sense. GHGC would not have known whether it realized any profit or loss on the plaintiffs' project until the project was completed. More importantly, given the representations included within Garic's Certifications, there was no reason for the plaintiffs to know or suspect that any portion of the $26,800.00 GHGC charged in April for "Plumbing/Heating/Ventilation" constituted some sort of charge for profit to which GHGC was immediately claiming entitlement.

11

Roofing either. On this record, it is unclear why the plaintiffs did not pay Gibson Roofing or whether they might still be exposed to liability for the amounts invoiced in relation to their project. Ex. 2, p. 1.

Nonetheless, Garic and GHGC certified in the March and September Bills that GHGC had or would pay Gibson Roofing the specific amounts charged for the plaintiffs' roofing. The plaintiffs paid those charged amounts based on these representations. Moreover, Garic's subsequent Bills included a representation that GHGC had paid for the roofing labor and materials. Garic has admitted that these representations were false when made. And the plaintiffs obviously relied on them to their detriment by paying GHGC's Bills and not demanding an immediate refund or credit for the unpaid roofing labor and materials.

As for Garic's claim that the plaintiffs suffered no damages because they also did not pay Gibson Roofing, this argument makes little sense. For the same reasons this court concluded in the two previous sections that the scienter requirements of knowing falsity and intent to deceive were met, this court also concludes that they are met here with respect to the $11,000.00 Garic represented GHGC paid for roofing. The plaintiffs sustained damages at the time they relied on Garic's knowing and fraudulent misrepresentations as to GHGC's use of those funds. Those misrepresentations induced the plaintiffs to pay GHGC $11,000.00 when it had no right to that because of the misrepresentation. Alaska applies both the benefit of the bargain standard and the out of pocket standard to measure a plaintiff's fraud damages—depending on whichever standard "accomplishes substantial justice" in the particular case. *Turnbull v. LaRose*, 702 P.2d 1331, 1336 (Alaska 1985). Under either standard, the plaintiffs were damaged $11,000.00 by the fraudulent misrepresentations because GHGC received $11,000.00 to which it was not entitled.[7]

---

[7] Under the benefit of the bargain standard, "a plaintiff is entitled to recover the difference between the actual value of the purchase and the value the purchase would have had had the representations been in fact true." *Turnbull,* 702 P.2d at 1336. Under the out of pocket standard, "the plaintiff [is entitled] to recover the difference between the value of what he has parted with and the value of what he has received in the transaction." *Id.*

12

Accordingly, the plaintiffs' loss of $11,000.00 for roofing arises from Garic's fraud and is nondischargeable under § 523(a)(2)(A).

**D.    Claimed fraud of $3,860.00 payment for "General Administration" and $45,794.61 payment for "Profit."**

Ms. Hatcher and Mr. Hrin also assert that they suffered additional fraud losses of $3,860.00 and $45,794.61 from charges Garic assessed in his December 16, 2021, email. That email provided an accounting of the project, which included an entry for "Profit and overhead based on 15% of paid out costs." Ex. 2. The $45,794.61 GHGC charged for the profit and overhead corresponds to the plaintiffs' damage claim for profits. *Id.*

The court has not been able to calculate or substantiate the plaintiffs' $3,860.00 damage claim. The plaintiffs state that this amount represents "General Admin." Adv. ECF No. 32 at p. 1. In support of the damage claim, they again cite to Garic's December 16, 2021, accounting. It does not reference "General Admin," but does include an entry for "General Labor from payrolled employees paid to date" in the amount of $6,360.00. Ex. 2. In their counter-designation, the Hayeses have speculated that the plaintiffs meant to refer to this entry. Given the differences in the descriptions and the amounts stated in the two entries, the court cannot reconcile the two figures.

As the plaintiffs point out, the charge for profit and overhead is specious. To the extent that GHGC did charge the $3,860.00 for general administration, that charge would similarly be unfounded. Nothing in the parties' contract or GHGC's prior Bills suggest that GHGC was legally entitled to assess the plaintiffs for either profit or general administration on their fixed-price contract. In the court's view, these charges are merely an attempt by Garic and GHGC to justify their inability and failure to return what should have been the balance of the funds originally deposited by the plaintiffs. According to Garic's accounting, GHGC received $352,921.53 from the plaintiffs for their construction and paid $298,937.39 for labor and materials. This left a balance of $53,984.14 unaccounted for.

Ideally, those unaccounted funds should have been available to pay the outstanding invoices discussed above. But GHGC did not have those funds. Given GHGC's inability to complete the construction and resulting breach of contract, the remaining funds should have been turned over to the plaintiffs. Instead, Garic attempted to account for the balance of these funds by deducting profit and general labor costs. But the parties entered into a fixed-price contract. There was no basis for GHGC to charge the plaintiffs for profit and overhead or general labor. None of GHGC's prior Bills did so.

Though it is unclear whether the monies charged for general labor are truly general administration costs, any difference is immaterial. Unlike the plaintiffs' payments on the Bills for unpaid labor or materials, the plaintiffs did not specifically pay GHGC on account of Garic's accounting for profit or general administration. Those amounts were merely accounting deductions used to justify why GHGC would not return the unearned funds to the plaintiffs after it breached the contract. The plaintiffs had previously deposited those funds in either January or March 2021. The plaintiffs have a claim in breach of contract for the return of those funds, but they are not damages arising from fraud. Unlike the Certifications, Garic did not make any misrepresentations to induce payment of these amounts.

As discussed previously, during the trial the plaintiffs generally asserted that the Hayeses fraudulently induced them to enter into the January 2021 contract and the March 2021 amendment by giving them false assurances regarding GHGC's ability and intent to perform. Yet, the plaintiffs failed to prove by a preponderance of evidence that the Hayeses' assurances were false when made. The court has held that at the time the plaintiffs paid any deposits, Garic and GHGC believed that they could and would complete the construction as evidenced by their efforts.

The plaintiffs have also previously asserted that the Hayeses defrauded them by falsely representing that their deposit(s) only would be used for their project. But the plaintiffs failed to prove that the Hayeses made any general representation regarding GHGC's use of the deposits

apart from the Bills. Moreover, at the conclusion of trial, the plaintiffs failed to connect any of their claimed fraud losses to either of these additional fraud theories.

The record before the court does not enable it to make any coherent connection between the plaintiffs' claimed fraud losses and these additional generalized fraud theories. To the contrary, while the construction project was incomplete and unsuccessful, the failure to construct the house, and to return the balance of the deposit, may constitute dischargeable breach of contract damages.

## Conclusion

For the reasons set forth above, judgment shall be entered in favor of Ms. Hatcher and Mr. Hrin in the amount of $26,768.46, and this amount shall be, and is, excepted from Garic's bankruptcy discharge pursuant to § 523(a)(2)(A). The court shall enter a separate judgment to this effect.

DATE:   October 29, 2025

  /s/ Gary Spraker_____
GARY SPRAKER
United States Bankruptcy Judge

Serve:  G. Parvin, Esq.
        R. Crowther, Esq.
        ECF Participants via NEF